**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
IMMACULATA TEGETE,

Plaintiff,

-against-

MARYKNOLL SISTERS OF SAINT DOMINIC, INC. **Civil Action #: 7:19-cv-05387**

Defendants.
------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated: March 28, 2022

By: Christopher R. Mount, Esq.
Mount Law Group, PLLC
chris@mountlaw.co
*Attorneys for the Plaintiff*

**TABLE OF CONTENTS**

1. Preliminary Statement & Legal Discussion…………………………………………….4

2. "*THE ENTISEMENT INTO SLAVERY CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF ADMITTED SHE JOINED MARYKNOLL AND CAME TO THE UNITED STATES VOLUNTARILY*" – REFUTED……………………6

3. "*THERE IS NO EVIDENCE THAT MARYKNOLL KNOWINGLY SUBJECTED PLAINTIFF TO FORCED LABOR AND, AS A RESULT, PLAINTIFF'S 18 U.S.C. 1589 CLAIM SHOULD BE DISMISSED*" – REFUTED……………………………………………………………………………..8

4. "*ALTERNATIVELY, THE FIRST AMENDMENT'S MINISTERIAL EXCEPTION BARS PLAINTIFF'S TVPRA CLAIMS*" – REFUTED…......10

5. Conclusion………………………………………………………………………….12

# TABLE OF AUTHORITIES

## Cases

1. *Garnica v. Edwards*, 72 F.Supp.3d 411 (S.D.N.Y. 2014)……………………………….4
2. *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011)…………………………...……5
3. *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)………………………………5
4. *Stein v. World-Wide Pluming Supply Inc.*, 71 F.Supp.3d 320, 328 (E.D.N.Y. 2014) …...6
5. *Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 598 F.3d 668 (9th Cir. 2010).....10
6. *Werft v. Desert Southwest Annual Conference of the United Methodist Church*, 377 F.3d 1099 (9th Cir. 2004)……………………………………………………………………...10
7. *Shukla v. Sharma*, 2009 U.S. Dist. LEXIS 90044 ………………………………………10

## Statues

1. 18 U.S.C. 1583……………………………………………………………………………5
2. 18 U.S.C. 1589……………………………………………………………………………5

## PRELIMINARY STATEMENT

The plaintiff, Immaculata Tegete (hereinafter referred to as "Ms. Tegete"), by and through her counsel, the Mount Law Group, PLLC, respectfully submits this memorandum of law in opposition to the motion made by the defendant Maryknoll Sisters of Saint Dominic, Inc. (hereinafter referred collectively as "Maryknoll"), to dismiss the complaint with prejudice via summary judgment.

As the Court is aware, Maryknoll has argued that our claims are utterly baseless, "shameful", without merit, etc. Putting aside Maryknoll's dramatic commentary, we will demonstrate that Maryknoll would have this Court deceived by its treatment of both the law and the record of discovery. A closer examination of the complete deposition transcripts, and other discovery, will reveal that there are significant issues of material fact still in dispute. Furthermore, a closer look at the law will also be helpful.

## LEGAL DISCUSSION

Maryknoll only cites one case from the Southern District in support of its position. *Garnica v. Edwards*, 72 F.Supp.3d 411 (S.D.N.Y. 2014). Maryknoll argues that this case stands for the notion that a Court should grant summary judgment when a plaintiff is unable to raise a genuine dispute about whether a defendant intentionally causes sufficient fear of serious, psychological or financial harm – the "*scienter*" element. *See* Maryknoll Memo at 21. A closer look at the Court's reasoning for granting summary judgment on the forced labor claims in *Garnica* reveals that the plaintiff contradicted nearly all of her causes of action with her own deposition testimony. Furthermore (1) no evidence was raised at all to support her claims in opposition to summary judgment, (2) the plaintiff offered blanketed denials to the statements of material facts without any

support, and (3) most of the plaintiff's causes of action were abandoned on opposition. *See Garnica* at 416-417.

It is also worth noting that the *Garnica* Court cites *United States v. Dann,* 652 F.3d 1160 (9th Cir. 2011) multiple times regarding the element of intention as well as *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). *See Garnica* at 413 & 416-417. More specifically, the *Garnica* Court states that for a plaintiff to survive summary judgment a plaintiff must provide "*some hard evidence showing that her version of events is not wholly fanciful*," as "*conclusory allegations or unsubstantiated speculation*" are not sufficient. *Ibid*. The *Dann* Court states that a defendant is guilty of forced labor if "*he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm – physical or nonphysical, including psychological, financial, reputational harm – that would compel someone in her circumstances to continue to work to avoid that harm*." *Dann* at 1170.

As the Court is aware, we have plead causes of action for enticement into slavery under 18 U.S.C. 1583. More specifically, we have alleged that Maryknoll enticed the Ms. Tegete to board a plane and fly to the United States with the intention that she be made held as a slave. The record of discovery reveals that (1) Maryknoll clearly enticed Ms. Tegete to board a plane and come to the United States and again two years later to go to Panama with promises of "missionary work", (2) Maryknoll did not in fact keep their promises upon Ms. Tegete's arrival both in the United States and in Panama – there was a complete bait and switch, (3) Maryknoll clearly used the threat of deportation to curtail Ms. Tegete's complaints and resistance, and (4) the intentions of Maryknoll are clearly a matter of fact that is still in dispute.

We have also plead causes of action for forced labor under 18 U.S.C. 1589. More specifically we have alleged that Maryknoll knowingly obtained the labor of Ms. Tegete by threats

of serious harm, particularly financial harm, as well as the threatened abuse of law or legal process, particularly deportation. We will demonstrate that the record of discovery documents that (1) Maryknoll knowingly obtained the labor of Ms. Tegete, (2) the labor was not what Ms. Tegete agreed to, (3) Maryknoll used the threats of financial ruin and deportation to obtain this labor, and (4) Maryknoll's threats would compel someone in similar circumstances to Ms. Tegete to continue to work to avoid the threatened harm.

As for Maryknoll's alternative argument, that the 1st Amendment's ministerial exception bar's Ms. Tegete's trafficking claims, it is utterly baseless in law and fact. We will demonstrate this as well below.

## ARGUMENT

### "*THE ENTISEMENT INTO SLAVERY CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF ADMITTED SHE JOINED MARYKNOLL AND CAME TO THE UNITED STATES VOLUNTARILY*" – REFUTED

The Court should disregard Maryknoll's argument on this point based upon the title of the argument itself. The statute in question does not require a plaintiff to show that she joined an organization or boarded a vessel bound for another country "involuntarily." The legal analysis does not turn on whether a plaintiff's actions are "voluntary" vs "involuntary" in the sense of the plaintiff's "free will" as if the Court was a philosopher. And, not to get too philosophical, but an individual person does not lose free will and become an involuntary automaton because he or she was "enticed" to board a plane. Pursuant to the statute, we are required to demonstrate that Maryknoll enticed Ms. Tegete to board a vessel to travel to another location with the intention of making or holding Ms. Tegete as a slave. *See* 18 U.S.C. 1583. Maryknoll is correct in citing *Stein v. World-Wide Pluming Supply Inc.*, 71 F.Supp.3d 320, 328 (E.D.N.Y. 2014) which demonstrates

that a plaintiff should allege that a defendant enticed the plaintiff to move to a new location with the intent to enslave the same. *See* Maryknoll Memo at 24.

The record of discovery clearly demonstrates that there are genuine issues of material fact that are in dispute. Firstly, on the issue of enticement itself, Maryknoll clearly enticed Ms. Tegete to come to the United States. Ms. Tegete desired to become a missionary for the Roman Catholic Church and faith. Maryknoll made promises to Ms. Tegete that she would be given the opportunity to pursue theological education and engage in missionary work fulltime by joining the Maryknoll organization and traveling to the United States. On this particular issue the facts are not even in dispute. *See* Exhibits to Mount Aff. A, B1 at 145, 150-55, 160-162, and B2 at 250-255.

Secondly, Maryknoll's intent for Ms. Tegete can be deduced from their use of her when she arrived. In New York and Chicago, Maryknoll assigned Ms. Tegete to eldercare and cleaning services for two years as opposed to missionary work. *See* Exhibits to Mount Aff. A, B1 at 104-106, 185-186, 190-191, B2 at 250-255, 287-288, C at 27-30, D at 53-58, and E at 52-55. When Ms. Tegete complained about the bait and switch she was threatened with deportation. *See* Exhibits to Mount Aff. B2 at 238-244, 290-291, C 65-71 and Exhibits to Coppola Aff. T & U. As for Panama, Ms. Tegete was not given an option for going. *See* Exhibits to Mount Aff. B2 at 380-385 and 390-391. Maryknoll again put Ms. Tegete to work doing cleaning, as well as farm work and cooking in Panama for two years instead of missionary work. *See* Exhibits to Mount Aff. B2 at 402-403, 406-408, and 413.

The record clearly demonstrates that Maryknoll enticed Ms. Tegete to come to the United States as well as Panama with promises of missionary work. Clearly Maryknoll intended to obtain Ms. Tegete's labor since they did in fact obtain it. The nature of the work assigned, versus what was promised, clearly demonstrates Maryknoll's bait and switch. The threat of deportation and

financial ruin are also clearly present in the record of discovery. There are clearly issues of material fact in dispute thus making summary judgment inappropriate on this point.

***THERE IS NO EVIDENCE THAT MARYKNOLL KNOWINGLY SUBJECTED PLAINTIFF TO FORCED LABOR AND, AS A RESULT, PLAINTIFF'S 18 U.S.C. 1589 CLAIM SHOULD BE DISMISSED*" – REFUTED**

As discussed above, and as is evident from the record of discovery, Maryknoll did in fact obtain the labor of Ms. Tegete. The record of discovery also clearly demonstrates that Maryknoll assigned Ms. Tegete to all manner of manual labor in New York, Chicago, and Panama in a massive four-year bait and switch. *See* Exhibits to Mount Aff. A, B1 at 104-106, 145, 150-55, 160-162, 185-186, 190-191 B2 at 250-255, 287-288, 402-403, 406-408, 413, C at 27-30, D at 53-58, and E at 52-55. Maryknoll would like the Court to believe that they did not "knowingly" subject Ms. Tegete to "forced labor" as defined by the statute. Maryknoll states in pertinent part:

"*Here, there is absolutely no evidence that Maryknoll intended to cause Plaintiff to believe that she would suffer serious harm if she did not continue the community living that Plaintiff experience as a Maryknoll notice and later during her mission work in Panama. There is also no evidence of an intentional threat of serious harm that compelled Plaintiff to remain with Maryknoll when she otherwise would have left.*" *See* Marknoll Memo at 22.

The record of discovery clearly demonstrates four things on this issue: (1) there were threats of deportation and financial ruin, (2) the threats were connected to non-compliance with Maryknoll directives and leaving the Maryknoll organization under all circumstances, (3) Maryknoll clearly intended Ms. Tegete to receive these threats, and (4) Ms. Tegete was actually threatened as any woman in her circumstances would be.

The threat of deportation and financial ruin was real and documented. Ms. Tegete brought up the fact that she was being used to do work that was clearly not what she has signed up for and the response, a year after her arrival in the United States, was to have her sign a document stating that she would be deported if she was dismissed from Maryknoll or left. Contemporaneously she was required to sign a second document stating that she would not be entitled to any financial compensation. *See* Exhibits to Coppola Aff. T & U. Despite what Maryknoll says, the "Memorandum of Understanding" has not been produced by the same for any other sister in discovery. Not even a blank copy has been produced. The only "Memorandum of Understanding", documenting the threat of deportation, that has been produced is the one for Ms. Tegete. Furthermore, Ms. Tegete also witness the deportation of another sister for failing to comply with Maryknoll leadership. Witnessing this demonstrated that Maryknoll was serious about getting rid of sisters that did not comply. *See* Exhibits to Mount Aff. B2 at 238-246 (full context), 290-291 and C at 65-71.

Maryknoll clearly intended Ms. Tegete to receive these threats because Maryknoll drafted them into documents and delivered them to Ms. Tegete a year after her arrival. *See* Exhibits to Coppola Aff. T & U. Maryknoll knew full well that Ms. Tegete gave up her whole prior life and all of her money and assets prior to joining and was fully dependent upon them. Furthermore, these threats were legitimate and serious for Ms. Tegete. She had to continue to work for Maryknoll or else she would be deported back to Tanzania and could possibly end up destitute due the inability to find employment. Aside from Ms. Tegete's testimony, fact witness Fr. Honoratus Mwageni also testified that the threat of going back to Tanzania unemployed was real and reasonable for Ms. Tegete to fear. *See* Exhibits Mount Aff. B2 at 247-250 and C at 65-71.

The record clearly reveals that Maryknoll threatened Ms. Tegete with deportation and possible financial ruin if Ms. Tegete did not continue to perform the required work. The required work, as clearly demonstrated in the record, was all manner of manual labor for four years and not missionary work as originally and continuously promised. The threats were obviously intentional because they were made multiple times and documented. *See* Exhibits to Coppola T & U.

**"*ALTERNATIVELY, THE FIRST AMENDMENT'S MINISTERIAL EXCEPTION BARS PLAINTIFF'S TVPRA CLAIMS*" – REFUTED**

This alternative argument is absurd on its face. Maryknoll cites *Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 598 F.3d 668 (9th Cir. 2010) and *Werft v. Desert Southwest Annual Conference of the United Methodist Church*, 377 F.3d 1099 (9th Cir. 2004) to support its conclusory statement "*Here, the majority of the conduct on which Plaintiff rests her claims is religiously motivated or otherwise protected under the ministerial exception.*" *See* Maryknoll Memo at 25.

What kind of majority of conduct are we talking about? 51% or 99%? What conduct in particular? More to the point, the legal authorities cited by Maryknoll can be distinguished from the present matter in a catastrophic way; those cases involve employment disputes. The case at hand involves human trafficking causes of action. The 13th amendment is a prohibition against slavery in the United States as a whole and the human trafficking statutes put this amendment into effect. If the Court were to buy into Maryknoll's argument on this point it would mean that religious organizations can violate the 13th amendment with impunity.

*Shukla v. Sharma*, 2009 U.S. Dist. LEXIS 90044 speaks to this issue well. Firstly, the ministerial exception defense functions as a challenge to a Court's subject matter jurisdiction. Therefore, the proper procedural mechanism to bringing the defense is a motion to dismiss made

via Rule 12(b)(1). Maryknoll has failed to do this. Summary judgment is not the proper procedural mechanism. *Shukla* at 7-8. Secondly, the *Shukla* Court recognized that whether or not the ministerial exception applies to Trafficking Victims Protection Act is an open question. The Court declined to apply the ministerial exception to bar claims under the TVPA and found subject matter jurisdiction. The reasoning was based on the fact that the TVPA is not analogous to federal and state employment laws and disputes. The Court stated in pertinent part that "*the standards that govern what constitutes trafficking and forced labor do not depend on the interpretation of religious doctrine; rather they are secular standards that guarantee that employers cannot deprive employees of fundamental human rights*." *Ibid*. at 20-23.

In the present matter the central questions are whether Maryknoll enticed Ms. Tegete to travel abroad with the intention of obtaining her forced labor, and whether or not Maryknoll knowingly obtained Ms. Tegete's labor by forced means under the statute. Did Maryknoll use threats of serious harm and wrongful use of legal process to obtain the labor of Ms. Tegete? Due to Maryknoll's failure to use the proper procedural mechanism to argue this point, the secular standards by which the Court may judge the record of discovery, and the absurd policy ramifications, I request that the Court discard this point outright.

## CONCLUSION

Based upon the record of discovery there are clearly issues of material fact still in dispute. We pray that this Honorable Court will deny Maryknoll's requests for dismissal on all grounds contained herein.

Dated: March 28, 2022

Respectfully submitted,

s/Chris Mount/s

By: Christopher R. Mount, Esq.
Mount Law Group, PLLC
400 Rella Boulevard, Suite 165
Suffern, New York 10901
chris@mountlaw.co
*Attorneys for the Plaintiff*