UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMMACULATA TEGETE

Plaintiff,

-against-

MARYKNOLL SISTERS OF SAINT DOMINIC, INC.,
MARYKNOLL COMMUNITIES, INC.

Defendants.

Case No. 7:20-CV-05023 (CS)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

CULLEN AND DYKMAN LLP
Richard A. Coppola
RC6624
44 Wall Street, 17th Floor
New York, New York 10005
(212) 510-2250
rcoppola@cullenllp.com
Attorneys for Defendant

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 7

POINT I........ 7

PLAINTIFF'S CLAIMS THAT THE TVPRA WAS VIOLATED IS NOT SUPPORTED BY THE UNDISPUTED FACTS ........ 7

CONCLUSION........ 10

# TABLE OF AUTHORITIES

**Cases**

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, No. 10-cv-1341, 2012 WL 748760 (E.D.N.Y. March 7, 2012) ........ 9

*Garnica v. Edwards*, 72 F.Supp.3d 411 (S.D.N.Y. 2014) ........ 9

*Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) ........ 7

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ........ 9

*Martinez-Rodriguez v. Giles*, No. 19-35526, 2022 WL 1132809 (9th Cir. April 18, 2022) ........ 9

*Muchira v. Al-Rawaf*, 1:14-cv-770, 2015 WL 1787144 (E.D. Va April 15, 2015), *aff'd* 850 F.3d 605 (4th Cir. 2017) ........ 7

*Saraswat v. Business Integra, Inc.*, 15-cv-4680, 2019 WL 1865193 (E.D.N.Y. April 25, 2019), *aff'd* 799 Fed. Appx. 85 (2d Cir. 2020) ........ 7- 9

*Stein v. World-Wide Plumbing Supply Inc.*, 71 F.Supp.3d 320 (E.D.N.Y. 2014) ........ 7

*U.S. v. Dann*, 652 F.3d 1160 (9th Cir. 2011) ........ 10

*Velez v. Sanchez*, 754 F.Supp.2d 488, 489 (E.D.N.Y. 2010), *aff'd in part, vacated in part* 693 F.3d 308 (2d Cir. 2012) ........ 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMMACULATA TEGETE,

Plaintiff,

-against-

MARYKNOLL SISTERS OF SAINT DOMINIC, INC., MARYKNOLL COMMUNITIES, INC.

Defendant.

Case No. 7:20-CV-05023 (CS)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Defendant Maryknoll Sisters of St. Dominic, Inc. respectfully submits this memorandum of law in reply to Plaintiff's opposition to Maryknoll's motion for summary judgment dismissing all causes of action in the complaint.[1] Plaintiff filed this lawsuit almost six years after she was released from her vows seeking money damages against Maryknoll as a result of her original expectations not being met. The Record, in fact Plaintiff's own deposition testimony, directly contradicts Plaintiff's allegation that Maryknoll enticed Plaintiff to fly to the United States with the intention that she be made a slave. Plaintiff's 18 U.S.C. § 1583 claims should be dismissed because Plaintiff admitted she joined Maryknoll and came to the United States voluntarily. In her opposition, Plaintiff admitted that she could and did have access to her passport, which was safeguarded in the Congregation's Secretariat office, whenever she desired. Plaintiff failed to

[1] Defendant incorporates the statements of facts and arguments contained in its previous submissions to the Court. The definitions from the previous submissions are used herein.

even address Maryknoll's argument that Plaintiff's document servitude claims under 18 U.S.C. § 1592 should be dismissed and, as a result, abandoned these claims. Finally, the Record is clear there is no evidence that Maryknoll knowingly and intentionally subjected Plaintiff to forced labor. Plaintiff was asked to assist with daily community chores that she considered beneath her station given her prior living experiences in Tanzania. Plaintiff has not and cannot come forth with names of Sisters who allegedly forced her to labor or threatened to deport her in violation of the TVPRA.[2] As a result, Plaintiff's 18 U.S.C. § 1589 claim should be dismissed. Maryknoll seeks summary judgment since there are no material issues of fact that warrant a trial here.

## STATEMENT OF FACTS

In response to Maryknoll's moving papers demonstrating that Plaintiff's expectations differed from the reality of religious life and community living, Plaintiff fails to come forward with any competent evidence to the contrary. Plaintiff's conclusory arguments in her opposition papers, which ultimately are a repetition of what Plaintiff alleged in her Complaint, are (1) contradicted by Plaintiff's own deposition testimony and (2) insufficient to create a triable issue of fact. Plaintiff concedes, because she must, the majority of the statements of material facts in which Maryknoll contends there are no genuine issues to be tried.

In her response to Maryknoll's Statement of Material Facts Pursuant to Local Civil Rule 56.1, Plaintiff admits the following critical facts[3] which are dispositive to awarding summary judgment to Maryknoll dismissing Plaintiff's enticement into slavery claims (18 U.S.C. § 1583) alleged in Plaintiff's first, fourth, and sixth causes of action in the Complaint:

---

[2] The Memorandum of Understanding, annexed to the moving papers as Exhibit T, does not state that Plaintiff would be deported if she was dismissed from or left the Congregation.

[3] The citations to all of the material facts are included in each of the separate paragraphs of Maryknoll's Statement of Material Facts Pursuant to Local Rule Civil Rule 56.1 dated January 28, 2022.

12. In September 2007, after seeing a reference to Maryknoll in a Catholic directory in Tanzania, Plaintiff initiated contact, writing a letter to Maryknoll in Dar Es Salaam, Tanzania.

13. In the letter, Plaintiff inquired about Maryknoll since she was "trying to find out which mission religious order [she would] be inspired to join."

17. Plaintiff then took the following voluntary steps for admission to Maryknoll: (1) wrote a formal letter of application, (2) drafted an autobiography, (3) completed a personal profile form, (4) was interviewed, and (5) participated in her "Live-In" in a Maryknoll community house in Kalebejo, Tanzania (with Sr. Peg M. Donovan) so that she could experience life with Maryknoll.

20. Thereafter, Maryknoll assisted Plaintiff with obtaining a Religious Worker (R-1) Visa from the United States Citizenship and Immigration Services ("USCIS").

79. Plaintiff testified that: (1) Sr. Aurora De la Cruz retrieved Plaintiff's passport before she boarded a flight to Tanzania; and (2) no one in the Congregation forced her to leave Tanzania for Panama when she did so in April 2013.

Plaintiff admits the following critical facts which are dispositive to awarding summary judgment to Maryknoll dismissing Plaintiff's document servitude claim (18 U.S.C. § 1592) alleged in the second cause of action in the Complaint:

30. Plaintiff needed her passport to obtain her social security card.

31. On July 20, 2010. Plaintiff was issued a social security number and card, which she needed to register for school and enroll in classes at Catholic Theological Union in Chicago.

32. Plaintiff's original passport (with her visa inside her passport) was taken to a secure office at the Maryknoll residence known as the Secretariat office for safekeeping.

33. All important documents of Maryknoll are safeguarded in the Congregation's Secretariat office.

34. There was no lock on Plaintiff's bedroom or secure place to keep her personal documents in her bedroom.

35. Plaintiff never asked any of the Maryknoll Sisters where her passport was stored.

36. Plaintiff knew Sr. Hockman was keeping her passport and "trusted" that Sr. Hockman would "give [it to her] when she's ready to give [to her]."

37. Plaintiff did not tell any of the Maryknoll Sisters, at any time, that she preferred to keep her passport in her possession.

38. Plaintiff could have access to her passport whenever she desired it.

39. Plaintiff was given her passport every time she requested it.

40. Plaintiff's other personal documents stayed in her possession while she was at Maryknoll.

44. Sr. Theresa Kastner and Sr. Shu Chen Wu, co-directors of Maryknoll's orientation program (the "Orientation Program"), returned Plaintiff's passport to her before she traveled to Chicago.

80. When she traveled to Panama, she retained possession of her passport.

Similarly, Plaintiff admits the following critical facts which are dispositive to awarding summary judgment to Maryknoll dismissing Plaintiff's forced labor claims (18 U.S.C. § 1589) alleged in Plaintiff's third, fifth, and seventh causes of action in the Complaint:

57. On August 12, 2012, before friends and the Congregation, Plaintiff voluntarily professed vows of poverty, chastity, and obedience.

58. Plaintiff was not physically threatened or physically harmed while in Chicago.

59. Plaintiff (like all Maryknoll novices) was asked to assist with community chores.

61. When in Tanzania, she had lived alone and hired people to do her laundry, cleaning, and some cooking.

62. A paid "house girl" cooked and did dishes for Plaintiff in Tanzania.

63. Maryknoll, however, required all Sisters (from novices like Plaintiff to members of the Formation Team) to participate in these types of daily chores.

64. This communal living and working are central parts of Maryknoll way of life and therefore of the Orientation's Program's introduction to that lifestyle.

67. Plaintiff was never prevented from communicating with individuals outside Maryknoll.

68. Plaintiff had a laptop and Skyped with friends in Tanzania while she was in New York.

69. Plaintiff also Skyped with Father Honoratus Mwageni, her mentor and a priest originally from Tanzania who resided in Chicago.

70. In 2011, Father Mwageni bought Plaintiff a cell phone, which she could and did use.

71. Also, she spoke by telephone with her family in Tanzania.

89. Plaintiff had free use of her laptop while in Panama and continued to communicate with Fr. Honoratus via Skype from Panama.

90. She also had a cell phone while in Panama.

91. Plaintiff's friends, Jean Enneking and Katie Sullivan, whom she had initially met at the Maryknoll Center in 2010, visited Plaintiff in Panama.

93. Ms. Enneking witnessed Plaintiff serve as a missionary in Panama, which included working with middle-aged women and regularly volunteering at a cancer clinic for children.

94. Plaintiff was free to and in fact did receive medical care for fibroids and allergies in Panama.

98. After the conference, Plaintiff took a two-week vacation to visit friends in Albany, Minnesota.

124. Maryknoll paid for all of Plaintiff's medical procedures and treatments wherever she was in the world.

125. On December 12, 2014, Maryknoll released Plaintiff from her vows "so that [she] may explore other possibilities for [her] life."

In addition to the above undisputed facts, Plaintiff made the following admissions in (1) sworn testimony and (2) signed documents. Plaintiff testified that she was not forced to come to America and admitted that she came of her own free will. *See* Exhibit C to Coppola Aff. at 160:4-14. Plaintiff voluntarily signed a written statement (Mission Assignment Profile) in which she listed Panama as a preference for her mission location *See* Exhibit Y (bates stamped no. 00016). She admits in the Mission Assignment Profile that she was "aware that the congregation has the authority to send [her] when there is a need out of [her] expectations." *See* Exhibit Y (bates stamped no. 00017).

Plaintiff's futile attempts to refute Maryknoll's Statement of Material Facts Pursuant to Local Civil Rule 56.1 are contradicted by the Record.

It is customary for Maryknoll Sisters to visit family after First Vows and before leaving for a mission assignment. *See* MSF ¶ 78. Plaintiff's statement in response to Paragraphs 77 and 78 of the MSF that she "went back to Tanzania, before heading to Panama, *because her I-94 Visa expired*" is refuted by Plaintiff's testimony and Plaintiff's e-mail to Sr. Marie Suzanne Moore, Director of Immigration Services from 2013 through 2017, dated March 27, 2013 (emphasis added). Plaintiff testified that when she traveled from New York to Tanzania in November 2012 her R-1 Visa has expired but that she had her I-94 Visa (which was valid for one year after her original visa had expired). *See* Exhibit C to Coppola Aff. at 349:3-14. In an e-mail

to Sr. Moore, Plaintiff acknowledged that her I-94 Visa was valid until July 30, 2013. *See* Exhibit RR annexed to Reply Declaration of Sr. Marie Suzanne Moore.

Plaintiff alleges that the Maryknoll Leadership Team refused to meet with her upon her return to New York from Panama. However, Plaintiff admits that "Sr. Rebecca Macugay, Vice-President of Maryknoll, met with [her] at the Maryknoll Residence." *See* Plaintiff's Response to MSF ¶109 and Exhibit B2 to Affirmation of Christopher Mount, Esq. ("Mount Aff.") dated March 28, 2022, at 460:16-25 and 461:1-4. Plaintiff even testified that Sr. Macugay was a member of the Maryknoll Leadership Team. *See* Exhibit B2 to Mount Aff. at 385:5-13. The Record is clear that Sr. Macugay, Vice President of Maryknoll from 2008 to 2014, met in person with Plaintiff repeatedly.

## ARGUMENT

## <u>POINT I</u>

### PLAINTIFF'S CLAIMS THAT THE TVPRA WAS VIOLATED IS NOT SUPPORTED BY THE UNDISPUTED FACTS

Plaintiff makes no attempt to distinguish the following cases cited in Maryknoll's original memorandum of law in support that are factually similar and directly on point here: *Muchira v. Al-Rawaf*, 1:14-cv-770, 2015 WL 1787144 (E.D. Va April 15, 2015), *aff'd* 850 F.3d 605 (4th Cir. 2017); *Velez v. Sanchez*, 754 F.Supp.2d 488, 489 (E.D.N.Y. 2010), *aff'd in part, vacated in part* 693 F.3d 308 (2d Cir. 2012); *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012); and *Stein v. World-Wide Plumbing Supply Inc.*, 71 F.Supp.3d 320, 328 (E.D.N.Y. 2014).

In addition to the above referenced cases, there is additional precedent for granting summary judgment to defendants when forced labor claims are alleged.

In *Saraswat v. Business Integra, Inc.*, 15-cv-4680, 2019 WL 1865193 (E.D.N.Y. April

25, 2019), *aff'd* 799 Fed. Appx. 85 (2d Cir. 2020), defendants offered plaintiff, an Indian national resident living in New York, employment at Business Integra, Inc. ("BI"). *Id.* at *3. Plaintiff entered into two separate agreements with BI. The first contract provided that plaintiff was to work as a consultant for other companies and called for a 70/30 split for compensation between plaintiff and BI, respectively. *Id.* Defendants also sponsored Plaintiff in his application for an H-1B visa. *Id.* After the H-1B visa was approved, defendants offered plaintiff a salaried position with BI, which plaintiff accepted. *Id.* at *4. There was no evidence that plaintiff ever worked for BI or the individual defendants at any time between his acceptance of the offer and when defendants terminated their sponsorship of plaintiff's H-1B visa. *Id.* at *4-5.

The court held that plaintiff's forced labor claim failed because defendants did not threaten plaintiff with serious harm or abuse or threaten to abuse the law or legal process. *Id.* at *8. The court rejected plaintiff's contention that defendants threatened him with deportation. Plaintiff testified that BI's Chief Technology Officer made threats of deportation and termination and cancellation of the H-IB. *Id.* at *8. The Court determined that defendants did not threaten plaintiff with serious harm under § 1589:

> because the consequences that Defendants warned Plaintiff about, *i.e.*, termination of Plaintiff's H-1B visa and deportation, were not used to compel him to perform work for Defendants, but rather were accurate statements about the consequences of Plaintiff's failure to fulfill his obligations under the H-1B Contract that he voluntarily entered into with Defendants.

*Id.* Defendants' decision to terminate plaintiff's H-1B visa after he failed to perform any work under the second agreement with BI was not an abuse of the legal process. *Id.* at *11. The court found that defendants "were simply exercising their contractual rights and their rights under the immigration laws to terminate the H-1B visa that they had sponsored." *Id.* The Second Circuit affirmed the district court's judgment granting summary judgment to defendants, which

dismissed plaintiff's TVPRA claims under 18 U.S.C. §§§ 1589, 1592, and 1594(a). *Saraswat v. Business Integra, Inc*., 799 Fed. Appx. 85 (2d Cir. 2020).

*See also DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, No. 10-cv-1341, 2012 WL 748760 (E.D.N.Y. March 7, 2012) (holding defendants' threats to fire plaintiffs were threats of adverse but legitimate consequences, and such threats did not constitute abuse of process under the definition of forced labor).

In *Martinez-Rodriguez v. Giles*, No. 19-35526, 2022 WL 1132809 (9th Cir. April 18, 2022) the United States Court of Appeals for the Ninth Circuit reversed the United States District Court for the District of Idaho that had granted summary judgment to defendants dismissing plaintiffs' forced labor and trafficking into servitude claims. The Ninth Circuit in *Martinez-Rodriguez* held that plaintiffs presented sufficient evidence to establish a forced labor claim under § 1589(a)(3). *Id*. at *14. Unlike here, plaintiffs proved three requisite elements: (1) that defendant Funk Dairy (a dairy operation) "used a law or legal process in a manner or for a purpose for which it was not designed; (2) that Funk Diary did so in order to exert pressure on the Plaintiff to cause him or her to provide labor; and (3) that Funk Diary obtained the Plaintiff's labor by means of the pressure created by their abuse." *Id*. at *8 (internal quotations omitted).

Plaintiff does not oppose Defendant's argument that Plaintiff's document servitude claims under 18 U.S.C. § 1592 should be dismissed. Therefore, Plaintiff has abandoned these claims and her second cause of action in the Complaint should be dismissed. *See Garnica v. Edwards*, 72 F.Supp.3d 411, 417 (S.D.N.Y. 2014) and Exhibit A to moving papers.

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) does not support Plaintiff's position; rather, it supports summary judgment in favor of Maryknoll. In *Jeffreys*, the Second Circuit affirmed the judgment of the United States District for the Southern District granting

defendants' motion for summary judgment because plaintiff's deposition testimony was inconsistent and self-contradictory in material respects and therefore inherently unreliable. *Id.* at 554. Similarly, here, the allegations in the Complaint are contradicted by Plaintiff's own testimony. Plaintiff testified that she freely came to the United States, had access to her passport whenever she needed it, and freely traveled and took vacations while a part of the Congregation.

Plaintiff's reliance on *U.S. v. Dann*, 652 F.3d 1160 (9th Cir. 2011) is misplaced. In that case, the Ninth Circuit upheld defendant's conviction of forced labor. Defendant had arranged for the victim to travel from Peru to the United States and enter under a fraudulently obtained visa, kept the victim's passport, prohibited her from speaking to anyone outside the Dann family, failed to compensate the victim for her work for two years, and verbally and physically abused the victim. *Id.* at 1162 and 1165. None of these facts are present in the Record here.

## CONCLUSION

Based on the foregoing and on Maryknoll's prior submissions, Maryknoll respectfully requests that this Court grant its motion for summary judgment and dismiss the complaint with prejudice.

Dated: New York, New York
April 28, 2022

Respectfully Submitted,

CULLEN and DYKMAN LLP
Attorneys for Defendant

By: ______________________
Richard A. Coppola, Esq.
RC6624
44 Wall Street, 17th Floor
New York, New York 10005
(212) 510-2250
rcoppola@cullenllp.com